**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12275

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

BRIAN BOCAGE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cr-60243-DSL-1

_____

Before BRANCH, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Brian Bocage is fascinated by fire. More than that, though, he sees himself as "Michael, the archangel"—"the son of God," "the prophet likened to Moses," the "high priest" of Israel. Doing

"God's work," at least in his view, Bocage committed an arson spree. All the while, he recorded his crimes and posted them on social media. Bocage was arrested, charged, and sentenced to 78 months' imprisonment for his most recent arson—to a police car parked outside a synagogue. He challenges the sentence as unreasonable. We affirm.

## I.

Bocage committed four arsons in two months in two states. These escapades started when he hurled a Molotov cocktail—his go-to weapon—at the North Lauderdale Veteran's Memorial in Florida. Next, after travelling to Tennessee, he set fire to the Hazen Brigade Monument and a monument in Centennial Park. Finally, back in his home state of Florida, he dowsed gasoline on an unoccupied police car outside the Synagogue of Inverrary-Chabad, then set it ablaze.

He targeted monuments, memorials, and police vehicles, and then posted his stunts on Instagram, to "get God's word out." He thought that "those types of things get people's attention." And he was right. Police first uncovered his identity from the synagogue's surveillance footage and his own Instagram posts. Bocage's brother also identified him as the culprit. And after his arrest, Bocage confessed to his serial arsons.

Bocage faced charges in both state and federal courts, in both Florida and Tennessee. There were four sets of cases. *First*, Broward County prosecutors charged him with various offenses for his two arsons in Florida. *Second*, Rutherford County

prosecutors brought similar charges for the Centennial Park arson. *Third*, a grand jury in the Middle District of Tennessee charged Bocage with a federal firearms offense for the Molotov cocktail he threw at the Hazen Brigade Monument. *Fourth*, in this case, a grand jury in the Southern District of Florida charged Bocage with an arson offense for the police car arson and a firearms offense for the North Lauderdale Veteran's Memorial arson.

Of the four sets of cases, the federal case out of Tennessee finished first. After a bench trial, the district court found Bocage guilty of the firearms offense and imposed a 20-month sentence. Then, in this case, Bocage pleaded guilty to arson and the government dismissed the firearms charge. Next came sentencing.[1] Bocage faced a statutory minimum of 60 months' imprisonment, higher than the advisory guidelines range of 41 to 51 months. *See* 18 U.S.C. § 844(f)(1). Bocage requested a 60-month sentence to run concurrently with the federal 20-month sentence. The government also sought a 60-month sentence but asked that it run consecutively.

At his allocution, Bocage narrated an epic story that featured Isaiah, the Virgin Mary, King David, and himself—the "high priest" whom Melchizedek had handpicked to be the "new king" of Israel. What this had to do with sentencing, Bocage did not say.

---

[1] When the Probation Office issued the presentence investigation report, the state court cases remained pending. But sometime before the sentencing hearing in this case, the Broward County cases were resolved with time served sentences.

The district court proceeded to weigh the statutory sentencing factors. *See* 18 U.S.C. § 3553(a). To start, the court explained that Bocage committed a "very serious offense"—"the fourth incident that occurred over a period of about a month." Next, the court noted that Bocage had been "laboring under" "serious mental health issues," including diagnosed schizophrenia and bipolar disorder. Despite "those troubles," he had refused medication and other treatment. The third factor, "paramount in this case," was "the need to provide specific deterren[ce] and protect the public from future crimes of the defendant." Bocage's allocution and resolute desire to spread "God's word" through arson did little to assuage concerns about his threat to public safety. The court then walked through the remaining factors, including the need to provide just punishment for the offense, promote respect for the law, and avoid unwarranted sentencing disparities. In the end, the district court sentenced Bocage to 78 months' imprisonment—18 months higher than the mandatory minimum. The sentence would run consecutively with the federal 20-month sentence.

## II.

We review the reasonableness of a defendant's sentence for abuse of discretion. *United States v. Henry*, 1 F.4th 1315, 1319 (11th Cir. 2021).

## III.

"A defendant challenging his sentence bears the burden of establishing that it is unreasonable." *United States v. Sarras*, 575 F.3d

24-12275                Opinion of the Court                5

1191, 1219 (11th Cir. 2009).  A sentence may be challenged as either procedurally or substantively unreasonable.  On procedure, a sentencing judge errs by "failing to consider the § 3553(a) factors," relying "on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (quotation omitted).  On substance, a sentencing judge errs by failing "to afford consideration to relevant factors that were due significant weight," giving "significant weight to an improper or irrelevant factor," or committing "a clear error of judgment in considering the proper factors."  *United States v. Olson*, 127 F.4th 1266, 1276 (11th Cir. 2025) (quotation omitted).

Bocage challenges his sentence on two grounds.  *First*, he claims that the district court imposed a harsher sentence under the unsupported assumption that the court in the Rutherford County case would later impose a lenient concurrent sentence.  *Second*, he asserts that the district court erred by imposing an upward variance based on his mental health issues.  We address each argument in turn.

**A.**

At the sentencing hearing, the district court said the following:

> Even a Tennessee state charge that could come after me, that Tennessee state judge will see two federal judges and a Florida state judge doing a lot with this conduct.  And so I think it puts even more importance on what this Court does because this Court will be really, I think, the last federal court that addresses all

of this conduct and will be part of what a Tennessee state court judge looks to, and in this Court's experience, like in Broward County, [it's] likely to say that it's been dealt with; it's been dealt with; so it's important that I deal with it.

From these remarks, Bocage contends that the district court made a baseless factual finding that the judge in the Rutherford County case would impose a sentence that would run concurrently with the sentence imposed in this case.

We disagree. Even assuming for argument's sake that the district court's stated purpose to "deal with" Bocage's crimes somehow relates to the proceedings out of Rutherford County, the court clarified—in no uncertain terms—that "[n]othing about this sentence touches what is only a pending charge in Tennessee." The court explained: "I don't consider it. It is not yet adjudicated. I don't know what will happen with it." We take the district court at its word. *See United States v. Curtin*, 78 F.4th 1299, 1313 (11th Cir. 2023). And it's clear from context that the court's remarks relate to the *conduct* charged in the Rutherford County case—namely, the Centennial Park arson—not the disposition of that case or "whether a state court sentenced it." Bocage does not dispute that the district court was within bounds to consider that prior conduct in its sentencing analysis.

**B.**

Bocage's second argument also fails. At the hearing, the district court made a few references to Bocage's "serious mental

24-12275                Opinion of the Court                7

health issues." But again, context adds clarity. The court did so to emphasize that Bocage's mental health did not excuse the "very serious" crime or displace "the need to provide specific deterren[ce] and protect the public from future crimes of the defendant"— three relevant factors under § 3553(a). And Bocage's allocution "has to concern any judge charged with the safety of the community in deciding how and what to [mete] out in sentencing." Not only did Bocage refuse to acknowledge wrongdoing, he doubled down, proclaiming that he did what he did "to sacrifice once and for all to save Israel and to rule all nations." "All of that," the court noted, "creates a heightened awareness of the need for specific deterren[ce]."

The district court did not vary upward to punish Bocage for his mental health problems, but to deter and incapacitate an obviously dangerous individual. *See* 18 U.S.C. §§ 3553(a)(2)(B), (C) (sentence must "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant"). The "sentencing factors of section 3553(a) require a judge to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007). The district court did just that. The court need not—indeed, may not—disregard weighty concerns about public safety and recidivism just because the defendant points to some underlying mental illness. The fact that a dangerous individual is also mentally ill does not make him any less dangerous, especially when he has steadfastly refused treatment.

At bottom, the "decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotation omitted). By assigning great weight to Bocage's threat to public safety and likelihood for recidivism—critical factors "that district courts must assess when imposing sentence"—the court did not abuse its discretion. *Pepper v. United States*, 562 U.S. 476, 492 (2011).

⋆      ⋆      ⋆

Context belies Bocage's claim that the district court imposed an upward variance based on unsupported assumptions or impermissible factors. We **AFFIRM**.